[Cite as *State v. Perry*, 2012-Ohio-4273.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   97572

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KYLE J. PERRY

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-540930

**BEFORE:**  Boyle, P.J., S. Gallagher, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**  September 20, 2012

**ATTORNEY FOR APPELLANT**

J. Charles Ruiz-Bueno
Charles Ruiz-Bueno Co., LPA
36130 Ridge Road
Willoughby, Ohio   44094


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Holly Welsh
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Kyle Perry, appeals his conviction, raising two assignments of error:

### Assignment of Error One

The trial court committed prejudicial error by denying, in part, defendant-appellant's motion to suppress regarding the search warrant for the Mosley Selective Suites on July 20, 2010.

### Assignment of Error Two

The trial court, by holding defendant-appellant 456 days in jail, violated his Sixth Amendment rights where there was no waiver of a speedy trial.

{¶2} Finding no merit to the appeal, we affirm.

### Procedural History and Facts

{¶3} Perry and his co-defendant, Jimmie Ivery, were indicted on nine counts: one count of burglary, three counts of theft, two counts of receiving stolen property, two counts of having weapons while under disability, and one count of possessing criminal tools. The burglary count carried a repeat violent offender specification and notice of prior conviction.

{¶4} The charges of the indictment arose from allegations that Perry, along with Ivery, burglarized the Gigliotti residence in the village of Walton Hills on July 17, 2010.

{¶5} Walton Hills Sgt. David Kwiatkowski investigated the reported burglary, speaking with Mr. Gigliotti, and interviewing his neighbor, Mr. Exton, who was home outside at the time of the burglary. Mr. Exton provided Sgt. Kwiatkowski with a

description of two males that he observed as well as the vehicle that he saw parked in the Gigliotti's driveway — a black Cadillac. Mr. Exton also identified the Cadillac that he observed in the driveway from a series of pictures shown to him by Sgt. Kwiatkowski that he had pulled up from the internet. Based on the information he obtained, Sgt. Kwiatkowski sent out a "teletype" through LEADS to other police districts describing the vehicle and the description of the males. As a result, he learned that a similar incident occurred on July 16, and one of the witnesses obtained a license plate number, indicating that the vehicle was registered to a Kyle Perry. Another district had identified Jimmie Ivery as the possible other male suspect with Perry.

{¶6} On July 20, 2010, Sgt. Kwiatkowski contacted the Wickliffe police department after learning from another district that Ivery had been pulled over in Wickliffe earlier that day, around 2:45 a.m., cited for driving under suspension, and arrested on an outstanding warrant. At the time of his arrest, Ivery was driving one of Perry's vehicles. Ivery had also been pulled over at the Mosley Suites, where both Ivery and Perry were staying. The police, however, did not allow Perry to take the car and, instead, towed the vehicle. Prior to towing the vehicle, the Wickliffe police searched and inventoried the contents of the vehicle, which included some jewelry that was later identified as items stolen in the July 17 Walton Hills burglary.

{¶7} In speaking with Wickliffe police, Sgt. Kwiatkowski further learned that Perry also had a black Cadillac — not the vehicle that had been impounded. Upon learning this, Sgt. Kwiatkowski drove out to the Mosley Select Suites and photographed

Perry's vehicle parked in the parking lot. Sgt. Kwiatkowski then observed Perry leave his suite and drive away in the vehicle. He proceeded to follow Perry but ultimately lost the Cadillac. Sgt. Kwiatkowski returned back to the hotel and spoke with someone in the front office, confirming that Perry and Ivery had been staying there prior to July 17 and that they wanted to break their ten-day lease early. Additionally, according to the hotel employee, the person who inquired about breaking the lease appeared very anxious and eager to move out of the hotel room relatively quickly.

{¶8} After obtaining all of this information, Sgt. Kwiatkowski returned back to his office, where Patrolman Davis obtained the written statement of Mr. Exton, identifying the Cadillac from a series of pictures and the written statements of the Gigliottis, identifying items from the photographs taken by the Wickliffe police of the jewelry found in connection with the stop of Ivery. Consequently, Sgt. Kwiatkowski obtained an arrest warrant and a search warrant for the hotel room being occupied by Ivery and Perry.

{¶9} In support of the search warrant, Sgt. Kwiatkowski provided an affidavit, which included 20 paragraphs, detailing his experience and background, his observations of the Gigliottis' house after the reported burglary, the items reported missing, and his investigation as described above. Based on the above sworn statements, a Lake County common pleas judge authorized a search warrant of the room at the Mosley Select Suites. The police executed the warrant and confiscated evidence from the room. Perry and Ivery were both arrested and then indicted on the nine counts described above.

{¶10} Perry and Ivery both pleaded not guilty to the charges and filed a motion to suppress, seeking to suppress the evidence obtained in the inventory search of the vehicle and the evidence obtained in the hotel room through the search warrant. The trial court held a hearing on their joint motion and ultimately found that the warrantless inventory search of the vehicle stopped on July 20 was unlawful, and therefore, suppressed the evidence obtained through the search of the vehicle. The trial court, however, further held that, after excising those paragraphs of the affidavit relating to facts derived from the unlawful inventory search of the vehicle, i.e., paragraphs 13, 14, and 15, "[t]he remaining portions of that affidavit set forth sufficient facts, on their face, to support the issuance of the search warrant." In reaching this holding, the trial court specifically rejected Perry's argument that certain inconsistencies in the facts presented at the suppression hearing invalidated the warrant.

{¶11} Perry subsequently withdrew his not guilty plea and entered a plea of no contest to the charges. The trial court found Perry guilty on all nine counts, imposed a total prison term of four years, and ordered that the sentence be served concurrent with his sentence in Lake C.P. No. 10CR00730.

{¶12} Perry now appeals, raising two assignments of error.

Motion to Suppress

{¶13} In his first assignment of error, Perry argues that the trial court erred in only partially granting the motion to suppress. He contends that the trial court should have granted the motion to suppress in its entirety because the underlying affidavit supporting

the search warrant was fatally flawed. Notably, he does not challenge the probable cause from the issuing judge's perspective. Instead, he argues that the facts supporting the affidavit were made with "reckless disregard for the truth," and therefore, the motion to suppress should have been granted. We disagree.

### A. Standard of Review

{¶14} Appellate review of the denial of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact, and is therefore, in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Carter*, 72 Ohio St.3d 545, 552, 651 N.E.2d 965 (1995). Consequently, when reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8. However, an appellate court reviews de novo whether the trial court's conclusions of law, based on those findings of fact, are correct. *State v. Lenard*, 8th Dist. Nos. 96975 and 97570, 2012-Ohio-1636.

### B. Validity of Affidavit Supporting Search Warrant

In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, following and quoting from *Illinois v. Gates* , 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶15} Initially, we note that a search warrant's supporting affidavit has a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d (1978). A defendant who claims that a warrant is flawed because it is based upon a false statement must prove by a preponderance of the evidence that the affiant made a false statement, either intentionally, or with reckless disregard for the truth. *State v. Tinsley*, 2d Dist. No. 23542, 2010-Ohio-3535, ¶ 23, citing *Franks* at 155-156. "'Reckless disregard' means that the affiant had serious doubts about an allegation's truth." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 31.

{¶16} However,

> [e]ven if the affidavit contains false statements [or omissions] made intentionally or recklessly, a warrant based on the affidavit is still valid unless, with the affidavit's false material set to one side [or with the omissions included], the affidavit's remaining content is insufficient to establish probable cause.

*State v. Sells*, 2d Dist. No. 2005-CA-8, 2006-Ohio-1859, ¶ 11, citing *State v. Waddy*, 63 Ohio St.3d 424, 441, 588 N.E.2d 819 (1992).

{¶17} "In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area

should be resolved in favor of upholding the warrant." *George,* 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph two of the syllabus.

*1.    Nexus to the Motel Room*

**{¶18}** Perry argues that Sgt. Kwiatkowski's affidavit was made with reckless disregard of the truth, and therefore, the trial court should have granted his motion to suppress.   He first challenges the affidavit on the basis that Sgt. Kwiatkowski "had no good faith basis upon which to believe that any stolen items from the Walton Hills burglary were kept in the Mosley Suites room."   In support of his argument, Perry points to Sgt. Kwiatkowski's following statement made on cross-examination: "I really didn't have any proof that any property was being kept there."

**{¶19}** Perry, however, wrongly takes this isolated statement out of context.   Sgt. Kwiatkowski acknowledged that he did not positively know that the stolen contraband was in the room, admitting that he neither saw it nor received any tips confirming that the contraband was there.   But his testimony was consistent with the averments contained in the affidavit and such statements were sufficient for a magistrate to determine that probable cause existed that the contraband would be found in the room.   Indeed, based on Perry and Ivery staying at the hotel at the time period immediately preceding and following the burglary, it was reasonable for the magistrate to conclude that any contraband was being stored at the room.   *See State v. Jones*, 2d Dist. No. 23926, 2011-Ohio-1984, ¶ 21.

**{¶20}** Moreover, Perry's argument wrongly implies that an investigator has to have conclusive proof that the evidence will be found in the location subject to the search warrant. The standard, however, is one of "probable cause." And given the deferential standard of review that the trial court must afford the magistrate or judge that signed the warrant, we cannot say that the trial court erred in agreeing that the affidavit contained sufficient evidence to support the warrant, even after excising the three paragraphs.

2.  *Identification of the Vehicle*

**{¶21}** Next, Perry argues that Sgt. Kwiatkowski averred certain "facts" that "were made with a reckless disregard for the truth in order to create probable cause." Specifically, he claims that, despite Sgt. Kwiatkowski averring that Mr. Exton positively identified Perry's Cadillac in a photograph, Sgt. Kwiatkowski's testimony at the suppression hearing revealed that "Mr. Exton did not identify the photograph before the search warrant was issued." To the extent that Mr. Exton identified a black Cadillac of the same style from internet pictures, Perry claims that "[t]his flies in the face of the affidavit, which expressly attests that Mr. Exton identified the vehicle from the actual photograph of the car parked at the Mosley Suites."

**{¶22}** Perry is challenging the following paragraph contained in Sgt. Kwiatkowski's affidavit:

16. That furthermore as part of the investigation in this case, a second vehicle was identified as being registered to Kyle Perry, that being a black Cadillac, with Ohio Registration EZ * * * which has chrome colored hub cabs which matched the physical description of the vehicle which had been seen and observed by Tim Exton outside the Gigliotti residence on or about July 17, 2010. That a photograph of the vehicle which at the time had

been parked at the Mosely [sic] Select Suites had been obtained by an investigator and subsequently displayed for Tim Exton, at which time Mr. Exton positively identified the vehicle as the vehicle he observed at the Gigliotti residence on or about July 17, 2010.

{¶23} This issue was raised and considered at the suppression hearing. And while we agree that Sgt. Kwiatkowski's affidavit could have been more precise, we find no basis to disturb the trial court's ruling. As stated above, "reckless disregard" means that the affiant had serious doubt about the allegation's truth. Here, based on Sgt. Kwiatkowski's testimony at the suppression hearing, it is clear that he believed that Mr. Exton positively identified Perry's actual vehicle. The trial court was in the best position to judge Sgt. Kwiatkowski's credibility, and we therefore cannot substitute our judgment here on appeal.

{¶24} For this very same reason, we find Perry's reliance on *State v. Dibble*, 195 Ohio App.3d 189, 2011-Ohio-3817, 959 N.E.2d 540 (10th Dist.), misplaced. In *Dibble*, the reviewing court affirmed the trial court's decision granting a motion to suppress after the trial court concluded that the affidavit supporting the search warrant contained intentional or reckless falsity. In reaching its holding, the court emphasized that the trial judge is in the best position to judge credibility and that competent, credible evidence existed to support the trial judge's decision. The same applies here. Competent, credible evidence exists in this record that Sgt. Kwiatkowski did not act with reckless disregard of the truth. There is no dispute that Mr. Exton selected a photograph of the same Cadillac that Perry owned and that such Cadillac was parked outside the hotel on July 20, 2010.

**{¶25}** We further note that Sgt. Kwiatkowski's testimony on this issue was confusing. Although it is clear from his testimony on cross-examination that he did not show Mr. Exton the photograph of Perry's Cadillac that he took around 11:00 a.m. on July 20, Sgt. Kwiatkowski's testimony on redirect suggests that Patrolman Davis — the same officer that obtained Mr. Exton's written statement on July 20, prior to the issuance of the search warrant — did obtain a positive identification based on the photograph. And given that the affidavit specifically references "Investigator," as opposed to "Affiant," it does not appear to be false. But even if we agreed with Perry that this distinction of identifying a photograph pulled from the internet versus a photograph of the defendant's actual vehicle rises to the level of reckless disregard for the truth, we still find that the trial court's decision is correct. Here, only the portion that would qualify as "reckless disregard of the truth" would need to be excised. Thus, the last sentence of paragraph 16 would have been excised. Without that reference, we find that the affidavit's remaining portions are sufficient to establish probable cause to search the hotel room. Indeed, the affidavit still establishes that Mr. Exton's physical description of the vehicle that he observed at the Gigliottis matches the physical description of the vehicle parked outside of the Mosley Select Suites, as observed by Sgt. Kwiatkowski.

**{¶26}** Accordingly, the first assignment of error is overruled.

<u>Speedy Trial</u>

**{¶27}** Perry argues in his second assignment of error that his speedy trial rights were violated because he was not brought to trial within the statutory period under R.C.

2945.71(C)(2). The state counters that Perry fails to account for the numerous motions and continuances that tolled the statutory period, including Perry's incarceration related to his other criminal case in Lake County.

{¶28} When reviewing a speedy trial question, the appellate court must count the number of delays chargeable to each side and then determine whether the number of days not tolled exceeded the time limits under R.C. 2945.71. *State v. Ferrell*, 8th Dist. No. 93003, 2010-Ohio-2882, ¶ 20. Furthermore, this court must construe the statutes strictly against the state when reviewing the legal issues in a speedy trial claim. *See Brecksville v. Cook*, 75 Ohio St.3d 53, 661 N.E.2d 706 (1996).

{¶29} R.C. 2945.71(C)(2) provides that a person against whom a felony charge is pending shall be brought to trial within 270 days after the person's arrest.

{¶30} Once the statutory limit has expired, the defendant has established a prima facie case for dismissal. *State v. Butcher*, 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368 (1986). At that point, the burden shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72. *Cook* at 55-56. If the state has violated a defendant's right to a speedy trial, then the court must dismiss the charges against the defendant. R.C. 2945.73(B).

{¶31} Under R.C. 2945.72, however, speedy trial time may be tolled by several events, including the following:

> (D) Any period of delay occasioned by the neglect or improper act of the accused;

(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

* * *

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]

{¶32} For purposes of computing time under R.C. 2945.71(C)(2), each day the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. *See* R.C. 2945.71(E). If the defendant is not incarcerated following his arrest, the speedy trial time is counted on a one-for-one basis.

{¶33} Although Perry's argument initially appears compelling, he fails to account for the numerous tolling events that occurred in this case. The state's argument, however, that Perry's incarceration in the Lake County case tolled all of his time is not accurate. Instead, the incarceration prevents Perry from utilizing the three-for-one provision during that period, i.e., starting on January 24, 2011. In this case, the docket reveals that Perry was arrested on July 20, 2010; his speedy trial time started running the following day. He was, therefore, in jail for 55 days prior to the first tolling event on September 13, 2010, which included the withdrawal of his counsel and his request for a continuance after being appointed a new attorney. Applying the three-for-one provision, this would equal 165 days counted against the state for purposes of calculating speedy trial time.

**{¶34}** But from that time, Perry's remaining time in jail until the time he pled was tolled by virtue of several motions filed, including his motion to suppress, supplemental motion to suppress, and motion to reconsider the trial court's decision on the motion to suppress, and by the several continuances requested on his behalf. As for Perry's claim that he expressed his desire to prevent any further continuances by virtue of his pro se motion filed on March 15, 2011, this argument does not negate the continuances requested on his behalf by his attorney. "'A defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent.'" *State v. Vaughn*, 106 Ohio App.3d 775, 785-786, 667 N.E.2d 82 (12th Dist.1995), quoting *State v. McBreen*, 54 Ohio St.2d 315, 320, 376 N.E.2d 593 (1978). Accordingly, we find no support for Perry's argument that his speedy trial rights were violated.

**{¶35}** The second assignment of error is overruled.

**{¶36}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_
MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
EILEEN A. GALLAGHER, J., CONCUR