[Cite as *State v. Mock*, 2018-Ohio-268.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 104997

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TYRONE MOCK

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-597566-A

**BEFORE:** Celebrezze, J., E.A. Gallagher, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** January 25, 2018

**ATTORNEYS FOR APPELLANT**

David N. Patterson
Patterson & Simonelli
30432 Euclid Avenue, Suite #101
Wickliffe, Ohio 44092


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Erica D. Barnhill
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1}  Appellant, Tyrone Mock, appeals from his convictions for multiple counts related to a check-fraud ring that operated in northeast Ohio.  Appellant claims that evidence gathered against him should have been suppressed based on constitutional violations, and that his convictions are against the manifest weight of the evidence and not supported by sufficient evidence.  After a thorough review of the record and law, this court affirms.

## I.  Factual and Procedural History

{¶2} Appellant cultivated a large check-fraud ring that operated throughout northeast Ohio.  He enticed Jerome Bohanon ("Bohanon"), an employee of a check-cashing business, to supply him with business names, bank account and routing numbers, and recent check numbers.  Appellant would then research the businesses and determine when would be the best time to attempt to cash the checks so as to avoid security procedures in place at many banks.

{¶3} Appellant, along with Jonnell George ("George"), would then recruit individuals to cash these checks and split the money.  After recruiting an individual, appellant would create counterfeit checks for amounts just below $1,000, using the information obtained from Bohanon.  The checks were made payable to the actual names of the person cashing the checks.  Appellant told several of these individuals that they would only face minor criminal repercussions from the scheme and could make anywhere from $200 to $400 per transaction.

**{¶4}** Police departments around northeast Ohio, as well as bank investigators, noticed a spike in fraudulent checks. Based on the similarities between the checks, officers in the Rocky River Police Department believed that the separate incidents were related. Detective William Duffy ("Det. Duffy") interviewed a suspect, D.H., who was identified as an individual that had cashed some fraudulent checks. She detailed her participation in the scheme and how she came to be involved. She also disclosed that she received the check from a person named "Ike" and gave police Ike's phone number. She showed them text messages she received from "Ike," asking her if she wanted to cash more checks. She also described his car, a white Oldsmobile Aurora.

**{¶5}** Det. Duffy, by way of a court order signed by a municipal court judge, obtained phone records from a cell phone carrier for the number provided by D.H. The subscriber information did not provide a name, and the address was for a California residence. Det. Duffy determined that the cell phone was one he considered a "burner" phone, or an anonymous cell phone. Using the call logs, Detective Craig Witalis ("Det. Witalis") was able to link the number to other phone numbers and an address on Monticello Boulevard in Richmond Heights, Ohio. After checking records, detectives learned that there was a 1999 white Oldsmobile Aurora owned by someone that resided at the address. Rocky River detectives obtained a search warrant signed by a common pleas court judge to place a GPS tracker on the car, and with the assistance of Rocky River Detective Tracey Hill, who is also a sworn Cuyahoga County Sheriff's deputy, did so on May 11, 2015. Det. Witalis, along with several other officers, conducted

surveillance when the car moved.

**{¶6}** Bohanon testified he provided appellant with information useful in creating counterfeit checks in exchange for money. Det. Witalis testified that from their surveillance of appellant, a pattern emerged. Appellant would visit Bohanon's place of employment, and then a few days later, appellant would drive to different banks. Sometimes appellant would arrive with another person in his car. Other times appellant would meet another person at the location. The other person would then go into the bank, come out, and meet up with appellant. Officers took pictures and recorded the location of the stops using software for the GPS tracker. At trial, Det. Witalis authenticated surveillance photos of these encounters.

**{¶7}** Detectives also investigated other individuals that participated in the scheme, and several gave statements implicating appellant.

**{¶8}** Officers eventually gained enough information to seek a search warrant for the Monticello Boulevard home, which was issued. There, officers found items appellant used to create forged checks, including check stock, printers, legitimate checks from certain businesses together with forged copies from those businesses, computer programs with past templates of forged checks, cash, and computer searches of businesses that had been the target of the check fraud.

**{¶9}** Appellant was arrested and charged in a 185-count indictment with engaging in a pattern of corrupt activity, conspiracy, money laundering, forgery, theft, telecommunications fraud, identity theft, and possession of criminal tools.

{¶10} Appellant filed three suppression motions. In his first, he argued that the search warrant for the placement of a GPS tracker was defective. In his supplemental suppression motion, he again sought to have all information related to the GPS tracker excluded, and also argued that the state improperly obtained phone records. On the day of the suppression hearing, appellant filed a pro se supplemental suppression motion arguing the GPS issue and other constitutional issues.

{¶11} A suppression hearing was held where the state called two detectives to testify about their investigation of D.H. Det. Duffy testified about D.H.'s statements regarding a phone number belonging to an individual named "Ike" that provided fraudulent checks to her, and that he then sought a court order from a municipal court judge for phone records regarding that number. The detective testified about the information that was disclosed to the judge, and appellant's attorney questioned the witnesses about information that was not disclosed. This information included the fact that D.H. lied to police about her address, and that she was recently hospitalized for mental illness. Other issues raised in appellant's suppression motions were not addressed at the hearing, and appellant called no witnesses and did not introduce any exhibits. Appellant's attorney did ask a few questions of the detective regarding the circumstances under which they attached the GPS unit to the car, but the warrant for GPS tracking was not introduced during the hearing.

{¶12} The trial court took the matter under advisement and later announced a decision in court and set forth the decision in a journal entry denying the motions. On

the record, the court stated,

> [t]he standard for an order for cell phone records is less than probable cause under 18 USC 2703(d). The standard is specific articulable facts that give the court reasonable grounds to believe that the records sought are relevant and material to an ongoing criminal investigation.

> In this case the police reports indicate that there were — that this confidential informant * * * had been identified through bank photos as one of the people passing stolen and counterfeited checks. She was interviewed, and, in fact, during one of her interviews, she received a text message from this telephone number at issue in which a person identified as Ike wanted to know if she wanted to cash more checks.

> This was actually done in the presence of the — well, no it wasn't done with — but the informant * * * did show Detective Duffy a March 15th text message which requested her involvement in further check cashing schemes.

> The basis of the suppression was that [the judge] was not informed of the informant's psychiatric history as well as the fact that she may have misrepresented her residential address as being with her parents as opposed to being at a psychiatric unit of Richmond Hospital, is my recollection.

> Regardless of that, though, there was a pattern of — strike that. Before I go further, she did describe the car that this person known to her as Ike would pick her up in and taker her to various banks. In fact, her parents at one point dropped her off at a residence, I believe in East Cleveland where the vehicle was consistent with the description provided by [the informant].

> And finally, and I think probably most important, in *Crawford* — *State v. Crawford*, that's a 2013 case, the Ohio Supreme Court indicated that citing a U.S. Supreme Court case that a person that has no reasonable expectation of privacy in his or her telephone records as opposed to the contents of those phone calls.

> That being the case, this was issued pursuant to the requirements of the statute. However, even if it were in error that it did not comply with the statutory mandates, that is not a basis for suppression. In fact, I believe there was some case law that indicates that the exclusionary rule may be invoked to express [sic] only evidence obtained as a result of a

constitutional violation. Here there's no constitutional violation. The United States Supreme Court has ruled that there is no expectation to privacy in one's telephone number.

Therefore, I'm going to deny the motion to suppress.

(Tr. 57-59.)

{¶13} Prior to trial, 65 counts were dismissed at the state's request. At trial, seven codefendants, including Bohanon, testified against appellant. At the conclusion of trial, 11 counts were dismissed at the state's request. Of the counts that remained, appellant was found not guilty of several counts of forgery and money laundering. He was found guilty of engaging in a pattern of corrupt activity ("RICO"), a violation of R.C. 2923.32(A)(1); conspiracy, a violation of R.C. 2923.01(A)(1); 28 counts of forgery, violations of R.C. 2913.31(A)(3); 29 counts of money laundering, violations of R.C. 1315.55(A)(3); 9 counts of petty theft, violations of R.C. 2913.02(A)(3); 7 counts of aggravated theft, violations of R.C. 2913.02(A)(3); 6 counts of telecommunications fraud, violations of R.C. 2913.05(A); 1 count of identity theft, a violation of R.C. 2913.49(C); 1 count of forging identification cards, a violation of R.C. 2913.31(A)(2); and 1 count of possession of criminal tools, a violation of R.C. 2923.24(A).

{¶14} At sentencing, the trial court merged the conspiracy count into the RICO count at the state's request. The court also merged each count of theft and forgery with each corresponding money laundering count. If a theft and forgery count did not have a corresponding money laundering count, then those counts were sentenced separately. This resulted in an aggregate 13-year prison sentence, composed of a 10-year prison term

for the RICO count, a 2-year term for each of the 29 counts of money laundering imposed concurrent to each other but consecutive to the RICO sentence, and a 1-year term for fourth-degree felony telecommunications fraud imposed consecutive to the RICO and money laundering counts. The following sentences were imposed concurrent to each other and all other counts: 11 months for each of the four counts of fifth-degree felony telecommunications fraud, 17 months for the other fourth-degree felony telecommunications fraud, 30 months for the identity fraud, 11 months for the possession of criminal tools, 17 months for forgery, and 6 months for theft.

{¶15} Appellant was also ordered to pay restitution and advised of postrelease control. He then filed the instant appeal assigning three errors and one supplemental error for review:

> I. The trial court erred in denying appellant's motion to suppress affidavits and warrants for installation and monitoring of a GPS tracking device which violated his rights under the Fourth Amendment of the United States and Article I Section 14 of the Ohio Constitution[s] and the court['s] failure to give appellant findings of facts and conclusion[s] of law on relevant constitutional issues thereby denying appellant[] due process.

> II. The trial court erred in denying appellant a fair trial, due to the state and detectives in this case intentionally failing to disclose through discovery material exculpatory evidence relating to accomplice/co-defendants which violated his rights under the Fourth Amendment of the United States and Article I Section 10 of the Ohio Constitution[s].

> III. The trial court erred in denying appellant['s] Rule 29 motion for acquittal as to the charges when the state presented insufficient evidence to sustain appellant's convictions and/or appellant's convictions [are] against the manifest weight of the evidence and thereby appellant was denied due process under the Fourth Amendment of the United States and Article I Section 10 of the Ohio [Constitutions] thereby denying appellant[] due process.

Supplemental Assignment of Error. Appellant was denied the effective assistance of trial counsel, in violation of his Sixth Amendment right, and due process of law, when trial counsel failed to conduct a pretrial investigation and interview crucial witnesses, and trial counsel[']s failure to file a motion to suppress deficient and invalid search warrant to search and seize the contents of computer and the warrantless to [sic] search and seiz[ure] of cell phone contents in violation of appellant's Fourth Amendment rights.

## II. Law and Analysis

### A. Suppression of Evidence

{¶16} Appellant's first assignment of error argues that the court erred in denying the suppression of evidence that was obtained through the installation of a GPS monitoring device on his car. In the course of arguing these issues, he also takes issue with the way in which the state obtained cell phone records.

{¶17} This court's review of a decision on a motion to suppress is a mixed question of law and fact. *State v. Lennon*, 8th Dist. Cuyahoga No. 104344, 2017-Ohio-2753, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. This court defers to the trial court on its factual findings, but reviews de novo the trial court's application of those facts to the applicable law. *Id.*, citing *Burnside*.

The Fourth Amendment to the United States Constitution protects people from illegal searches and seizures. In order to employ Fourth Amendment protections, a defendant must have a "constitutionally protected reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The United States Supreme Court has directed reviewing courts to consider a two-part test in order to determine whether the Fourth Amendment is implicated. "First, has the individual manifested a subjective expectation of privacy in the object of the

challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986), citing *Katz* at 360.

*State v. Lemasters*, 12th Dist. Madison No. CA2012-12-028, 2013-Ohio-2969, ¶ 8.

**{¶18}** To the extent appellant challenges the decision related to the search warrants for the attachment of a GPS tracking device, this court cannot properly address those arguments. Appellant's initial suppression motion references the warrants and accompanying affidavits, but those documents were not attached.[1] At the suppression hearing, appellant did not introduce those documents as exhibits. As a result, those documents were not before the trial court at the appropriate time. We cannot discern the merit of appellant's arguments without these documents. Statements made in a search warrant affidavit enjoy a presumption of validity. *State v. Taylor*, 174 Ohio App.3d 477, 2007-Ohio-7066, 882 N.E.2d 945 (1st Dist.). Without evidence to the contrary, this court is bound to find the statements made in the affidavit valid and, thus, the warrants valid.

**{¶19}** The evidence adduced at the suppression hearing indicated that police were investigating an incident where a person cashed fraudulent checks made to resemble payroll checks. Officers interviewed an individual, D.H., and she provided them with a phone number that she says was used to contact her in order to arrange the provision of a

---

[1]The suppression motion electronically filed with the clerk's office references these motions as attached, but they are not attached to the official version contained in this court's record. An undocketed, unfiled version of this document with the attachments exists in the file received by this court, but is not properly a part of this court's record.

fraudulent check to her. She indicated the person with whom she communicated was named "Ike," and the two had exchanged text messages and talked over the phone. With her permission, officers examined her phone and viewed the text messages that were exchanged between that phone number and the person being interviewed. Det. Duffy then approached a municipal court judge for an order directing the cell phone provider to release records related to the account. Det. Duffy relayed the steps in the investigation that had occurred and the statements made by the individual under the investigation. Det. Duffy did not disclose that this individual had a history of mental illness and was recently hospitalized for mental health treatment, and did not disclose that this individual lied about her current address. The judge issued a court order directing AT&T to produce subscriber records relating to the phone number provided, including address, call logs, location data, and text messages.

{¶20} Det. Duffy and Det. Witalis received information regarding the phone number from AT&T, and the subscriber information was not helpful. The account information provided did not include a name, and the address listed was a California address. Det. Witalis described the phone as a "burner" or anonymous phone. Using information contained in the call logs, Det. Witalis testified that he determined, through the frequency of the calls and other information, that the phone was likely related to an address on Monticello Boulevard in Richmond Heights, Ohio. A records check revealed a car registration for a white Oldsmobile Aurora owned by a person at that address. Upon surveillance of that address, he observed a car that matched the description

provided by D.H., a white Oldsmobile Aurora.

**{¶21}** First, the trial court held that appellant did not have an expectation of privacy because he denied being the owner of the phone, the subscriber using the phone, or associated with the phone in any way.

> For a person to have been aggrieved by an unlawful search or seizure, he or she "'must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.'"

*State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, ¶ 45, quoting *Alderman v. United States*, 394 U.S. 165, 173, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), quoting *Jones v. United States*, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). This, alone, is a basis to affirm the trial court's decision. Appellant has maintained that these records do not pertain to him. Therefore, he would not be aggrieved by a search of these records.

**{¶22}** However, because the state has asserted that these are records that relate to appellant in that they pertain to a cell phone used by appellant, in an abundance of caution, this court will analyze the matter further.

**{¶23}** This court has previously found no privacy right exists for cell phone records maintained by a phone company. *Id.* at ¶ 47 ("telephone users have no right of privacy in the numerical information they convey to the telephone company. Courts have

also held that this reasoning applies to cell phone records obtained from cell phone companies as well."), citing *State v. Neely*, 2d Dist. Montgomery No. 24317, 2012-Ohio-212; *United States v. Dye*, N.D.Ohio No. 1:10CR221, 2011 U.S. Dist. LEXIS 47287 (Apr. 27, 2011). Information that has been voluntarily turned over to third parties does not enjoy protection because a person does not have a legitimate expectation of privacy in such information.

{¶24} The Second District has reaffirmed its holding in *Neely* and found that an individual has no constitutional privacy interest in cell phone location data, or ping data, maintained by a cell phone carrier.[2] *State v. Taylor*, 2d Dist. Montgomery No. 25764, 2014-Ohio-2550. The request for information sent to the phone company in that case requested location data, call logs, and subscriber information. *Id*. at ¶ 8.

{¶25} The court order in the present case also sought text messages. The request for text messages could lead to the disclosure of metadata about appellant's communications as well as the content of communications where a privacy interest may exist. 18 U.S.C.S. 2703(c) specifically limits its application to records of electronic communications, but subsection (b) provides for the release of the contents of communications of a remote computing service only with prior notice to the subscriber and other restrictions.

{¶26} It is unclear from the suppression hearing whether any contents of text

---

[2] This issue is currently pending before the United States Supreme Court. *Carpenter v. United States*, Supreme Court Case No. 16-402.

messages were, in fact, turned over and, if they were, whether they were used against appellant in any manner. If the requested information turned over by the phone company was limited to the date, time, and phone numbers of exchanged text messages, then appellant would not have a privacy interest in that metadata.

{¶27} Det. Duffy testified that he used the call logs of the anonymous cell phone to link that number to others that were frequently called. Through an investigation of those numbers, using searches of publicly available information, he was able to identify a residential address that was in some way associated with the person that used the anonymous phone. An Ohio Bureau of Motor Vehicles search yielded a vehicle matching the description given to police that was also associated with the address.

{¶28} There is no indication that the contents of the communications to which appellant had a reasonable expectation of privacy were turned over as a result of the court order or, if the contents of text messages were turned over, were used in the investigation against appellant as a result of the court order. Appellant has the burden of at least prima facie establishing a violation of his Fourth Amendment right to privacy, and without showing that the contents of text messages were, in fact, turned over to police, appellant has not made that showing.

{¶29} Appellant argues that the records disclosed to police were not turned over in discovery. This court cannot review such a claim, but it is apparent that appellant did not ask the detectives that testified at the suppression hearing whether the contents of text messages were disclosed. Further, the records were not otherwise used at trial.

Therefore, the trial court did not err in this respect when denying appellant's motion to suppress.

{¶30} Appellant also argues that there were material omissions made to the judge issuing the order that should have resulted in a lack of reasonable suspicion. Generally, when this court is reviewing this type of issue, there is a search warrant affidavit that details the information relayed to the authorizing judge. In this case, there is no affidavit relating to the court order used to obtain cell phone records, but Det. Duffy testified about the information relayed to the issuing judge.[3] Det. Duffy readily admitted that he did not disclose that the witness had lied to him about her residence, and that he did not disclose that she was recently hospitalized for mental illness.

{¶31} Appellant likens this to cases where a search warrant affidavit contained material misstatements or omissions, allegedly causing them to be fatally deficient. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In those cases,

> [a] defendant who claims that a warrant is flawed because it is based upon a
> false statement must prove by a preponderance of the evidence that the
> affiant made a false statement, either intentionally, or with reckless
> disregard for the truth. *State v. Tinsley*, 2d Dist. No. 23542, 2010 Ohio

---

[3] The same procedure has been used in the investigation of the sharing of child pornography online where courts have affirmed the denial of motions to suppress. *See, e.g., Lemasters,* 12th Dist. Madison No. CA2012-12-028, 2013-Ohio-2969.

3535, ¶ 23, citing *Franks* [*v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)].

*State v. Perry*, 8th Dist. Cuyahoga No. 97572, 2012-Ohio-4273, ¶ 15.

**{¶32}** The *Perry* court went on to note that "'[e]ven if the affidavit contains false statements [or omissions] made intentionally or recklessly, a warrant based on the affidavit is still valid unless, with the affidavit's false material set to one side [or with the omissions included], the affidavit's remaining content is insufficient to establish probable cause.'" *Id.* at ¶ 16, quoting *State v. Sells*, 2d Dist. Miami No. 2005-CA-8, 2006-Ohio-1859, ¶ 11, citing *State v. Waddy*, 63 Ohio St.3d 424, 441, 588 N.E.2d 819 (1992).

**{¶33}** Here, this issuance of the court order for records is governed by a standard less than probable cause due to the lack of a privacy interest in the requested records. 18 U.S.C.S. 2703(d). According to this statute, the standard for the issuing judge is whether "the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." This standard is similar to that fleshed out in the *Terry* line of cases. *United States v. Warshak*, 631 F.3d 266, 291 (6th Cir.2010), citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under this standard, an investigative search is reasonable when the state actor is able to point to articulable facts that give rise to a reasonable suspicion of criminal activity. *State v. Eddy*, 8th Dist. Cuyahoga No.

104417, 2017-Ohio-7398, ¶ 19, citing *Terry*.

**{¶34}** Assuming for the sake of argument that appellant has standing and an interest in the cell phone records, even with the omissions appellant points out, there still exists a reasonable suspicion of criminal activity based on the factual recitation above.

**{¶35}** The GPS search warrants and affidavits are not attached to any of appellant's suppression motions filed with the clerk. However, an undocketed, unfiled copy of appellant's May 18, 2016 suppression motion is included in the lower court file. This document has hand-written notations and other irregularities. Therefore, given these limitations, this court will examine appellant's arguments in light of these warrants and affidavits.

**{¶36}** Attached to a May 7, 2015 GPS warrant is an affidavit executed by Det. Witalis. There, he describes the investigation of several individuals passing bad checks and the individuals supplying these checks. The information provided by D.H. was set forth, including the phone contact she had with a person named "Ike" and the fact that he drove a white Oldsmobile Aurora. Det. Witalis averred that he was able to use phone records from the number provided by D.H. to hone in on a person closely associated with that phone number that also owned a white Oldsmobile Aurora. Detectives and a secret service agent then met with D.H. again and she picked appellant out of a photo array and identified him as Ike. Further surveillance of the address that Det. Witalis identified as being closely related to the cell phone number provided by D.H. resulted in Det. Witalis observing appellant driving the white Oldsmobile Aurora.

**{¶37}** This court's review is further hampered by the nature of the record in this case because there are two documents purporting to be GPS warrants issued on May 7, 2015, for the same vehicle and appear to be copies of the same warrant. However, the affidavit attached to each is different. The second May 7, 2015 search warrant affidavit avers similar statements, but also included that an officer had taken a statement from J.M. She was caught attempting to pass a fraudulent check and indicated that it was supplied to her by someone who identified himself by the name of "Black" and drove a white Oldsmobile Aurora.

**{¶38}** A June 24, 2015 warrant for an extension of the original GPS warrant indicated that appellant's vehicle was at several banks when attempts were made to pass fraudulent checks. Det. Witalis also averred that the vehicle visited a check cashing business — the same check cashing business that employed Bohanon — prior to visiting the various financial institutions where fraudulent checks were passed.

**{¶39}** Regardless, at the suppression hearing, appellant argued in his opening statement that the GPS warrant affidavits were deficient, but then failed to pursue the issue further at the suppression hearing. All the evidence adduced was in relation to the court order issued by a municipal court judge for phone records, not the GPS warrants that were issued by a common pleas court judge. Appellant adduced testimony that detectives failed to disclose facts about D.H. — she had a history of mental illness including recent hospitalization, and she lied to police about her address — but that was in the context of the court order to obtain cell phone records. As this court recognized in

*Perry*, it is the defendant's burden to demonstrate a material misstatement or omission in a search warrant affidavit under *Franks*. *Perry*, 8th Dist. Cuyahoga No. 97572, 2012-Ohio-4273, ¶ 15. Appellant failed to do so at the suppression hearing.

**{¶40}** Therefore, appellant's first assignment of error is overruled.

## B. Failure to Disclose Evidence

**{¶41}** In his second assignment of error, appellant claims that the state failed to disclose certain allegedly exculpatory evidence relevant to the suppression issues.

**{¶42}** The United States Supreme Court has held, that the "[s]uppression by the prosecution of evidence favorable to an accused who has requested it violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), syllabus.

**{¶43}** Appellant does not point to anything in the record that this court can review for what was or was not disclosed in discovery. Appellant claims that there was certain information not used at trial that was not disclosed. Specifically, appellant points to a photo array that was shown to D.H. that was referenced at the suppression hearing, the telephone records that were turned over to police as a result of D.H.'s information, and D.H.'s statements to police. This court cannot determine what was or was not turned over in discovery. Therefore, this assigned error is overruled.

## C. Sufficiency and Manifest Weight

**{¶44}** In a single assignment of error, appellant argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

> Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. [Franklin] No. 10AP-881, 2011-Ohio-3161, ¶ 11. * * * Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Id.* * * *.

*State v. Baatin*, 10th Dist. Franklin No. 11AP-286, 2011-Ohio-6294, ¶ 8. *See also State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2015-Ohio-1946, ¶ 11. Because appellant does not assign these errors separately, and a sufficiency analysis is subsumed by a manifest weight analysis in this case, this court will address the arguments together.

> The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine

whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

*State v. Ball*, 8th Dist. Cuyahoga No. 99990, 2014-Ohio-1060, ¶ 35.

**{¶45}** Appellant was convicted of engaging in a pattern of corrupt activity as defined by R.C. 2923.32(A)(1). This statutes provides "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."

**{¶46}** R.C. 2923.31 defines certain terms set forth in the prohibition. The statute defines an enterprise as "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). The statute defines a pattern of corrupt activity as "means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."

R.C. 2923.31(E). Finally, the statute defines corrupt activity as engaging in, attempting to engage in, or conspiring to engage in a wide range of listed offenses including those that apply to this case, such as money laundering, theft, forgery, and telecommunications fraud.

{¶47} Money laundering, as it relates to this case, is defined in R.C. 1315.55(A)(3), and provides, "[n]o person shall conduct or attempt to conduct a transaction with the purpose to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of corrupt activity."

{¶48} Appellant was also convicted of conspiracy (R.C. 2923.01(A)(1), which prohibits one from planning or aiding in planning the commission of, among other offenses, engaging in a pattern of corrupt activity, with the purpose to, or promoting or facilitating, the commission of such an offense. R.C. 2923.01(A)(1).

{¶49} Forgery as relevant here, provides that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [u]tter, or possess with purpose to utter, any writing that the person knows to have been forged." R.C. 2913.31(A)(3).

{¶50} Theft prohibits one "with purpose to deprive the owner of property or services," from knowingly obtaining or exerting control "over either the property or services in any of the following ways: (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) By deception." R.C. 2913.02(A)(2) and 2913.02(A)(3).

**{¶51}** Telecommunications fraud criminalizes the use of telecommunications in a scheme to defraud. It provides,

> [n]o person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, or telecommunications service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud.

R.C. 2913.05(A).

**{¶52}** Finally, appellant was convicted of possessing criminal tools. This is defined in pertinent part, stating, "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." R.C. 2923.24(A).

**{¶53}** Appellant does not attack the individual elements of any given conviction, but claims that there is insufficient evidence on all convictions because the evidence adduced at trial demonstrated that codefendant Jonnell George was the actual perpetrator of these crimes. This argument ignores volumes of evidence introduced at trial. The evidence seized from appellant's home, the testimony of codefendants that pointed to both appellant and George as the contacts through which they received checks to cash, and the surveillance evidence of appellant driving with people or meeting people at various locations with banking institutions where fraudulent checks were cashed or attempts to cash checks were made at that time. Many of those people testified about their contact with appellant and George.

**{¶54}** The testimony adduced at trial demonstrated that appellant conspired with

others to engage in a scheme to defraud various businesses and financial institutions by creating counterfeit payroll checks and having people that were in desperate need for money use their real names to cash those checks. For instance, Jovan Blackwell identified appellant in court as the individual from which he received fraudulent checks. Appellant drove Blackwell to banks in Willoughby and Mayfield, and Blackwell cashed checks made out from Target Staffing and Executive Caterers accounts. Blackwell then split the money with appellant. Those checks, along with surveillance photos documenting the trips, were submitted by the state as exhibits at trial.

{¶55} Bohanan, appellant's source of financial account information, also testified that appellant paid him for this information.

{¶56} In total, nine codefendants testified about their interactions with appellant, George, or both. Appellant attempts to attack the veracity of these witnesses' testimony because they were testifying as part of plea agreements, or through minor inconsistencies in that testimony. The overwhelming weight of evidence, including all the machinations of appellant's criminal enterprise found in the basement office of his residence, demonstrates that appellant's convictions are not against the manifest weight of the evidence and are supported by sufficient evidence.

{¶57} Appellant's third assignment of error is overruled.

## D. Ineffective Assistance of Counsel

{¶58} In his supplemental assignment of error, appellant argues that counsel was ineffective for not properly investigating witnesses, seeking to suppress the results of a search of appellant's computer based on a lack of jurisdiction, and seeking to suppress the contents of phone records obtained after a search of cell phones found in appellant's car after he was arrested.

{¶59} A claim of ineffective assistance of counsel requires a defendant to show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *State v. Smith*, 89 Ohio St.3d 323, 327, 731 N.E.2d 645 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must show that there exists a reasonable probability that, were it not for counsel's errors that rendered performance constitutionally deficient, the results of the proceeding would have been different. *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998).

{¶60} In evaluating a claim of ineffective assistance of counsel, a court must give great deference to counsel's performance. *Strickland* at 689. "A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69.

{¶61} First, appellant claims that it was incumbent on trial counsel to interview the original codefendant that pointed Det. Duffy and Det. Witalis in appellant's direction.

Appellant claims there is no police report or other information to corroborate statements made by these detectives during the suppression hearing that D.H. provided any evidence against appellant. In fact, appellant argues that the identification of D.H.'s contact as "Ike" and the fact that the phone number she provided did not belong to appellant constitutes exculpatory evidence that the state was required to turn over in discovery.

{¶62} This court does not have in the record before it what evidence was or was not exchanged in discovery. But we do know that police reports documenting the contents of D.H.'s statements to police were introduced at the suppression hearing. This court has already determined that the omissions appellant raises, when included in the overall information provided to the municipal court judge, still provide a valid basis to obtain cell phone records. Therefore, there is no likelihood of a different result had this information been more thoroughly explored in the suppression hearing. Further, corroboration did exist in D.H.'s statements to police in the form of police reports and the car she identified as appellant's.

{¶63} Within this argument, appellant goes on for several pages documenting alleged failings that bear no relation to anything that would be in the record before this court. Therefore, we cannot address them. The specific arguments include appellant asserting that trial counsel was ineffective for failing to investigate the circumstances surrounding a May 7, 2015 affidavit of Det. Witalis. The search warrant affidavits were addressed above and there is no indication that additional investigation would have led to a finding that the warrant lacked probable cause. Further, these issues with the search

warrants were never raised or properly argued at the suppression hearing. This would constitute a better argument for ineffective assistance of counsel, but it is not advanced here.

{¶64} Appellant also argues that trial counsel was deficient when he failed to seek the suppression of evidence obtained from the search of appellant's computer that was recovered during the search of his home. Appellant claims the search warrant for a search of the computer was issued by a Summit County common pleas court judge who did not have jurisdiction in the case. Appellant directs this court's attention to a search warrant and affidavit that does not exist in our record. This court cannot determine the validity of any aspect of this argument.

{¶65} Finally, appellant argues counsel was ineffective for failing to seek the suppression of evidence recorded from the search of three cell phones recovered from appellant's car. Appellant argues that the search of these cell phones was conducted without a warrant and should have been suppressed. Again, however, there is nothing in this court's record that would substantiate that claim.

{¶66} Appellant's final assignment of error is overruled.

### III. Conclusion

{¶67} The trial court properly denied appellant's motions to suppress on the issues that were raised and argued at the suppression hearing. Those that were not maintained or raised by appellant, pro se, do not constitute reversible error here. Appellant's convictions are supported by sufficient evidence and are not against the manifest weight

of the evidence.

**{¶68}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

EILEEN A. GALLAGHER, A.J., and
TIM McCORMACK, J., CONCUR