[Cite as *State v. Laubacher*, 2019-Ohio-4271.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2018 CA 00169 |
| JASON LAUBACHER | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:           Criminal Appeal from the Court of Common
                                                              Pleas, Case No.  2017 CR 02118

JUDGMENT:                                         Affirmed

DATE OF JUDGMENT ENTRY:         October 15, 2019

APPEARANCES:

For Plaintiff-Appellee                         For Defendant-Appellant

JOHN D. FERRERO                            GREGORY SCOTT ROBEY
PROSECUTING ATTORNEY             ROBEY & ROBEY
KATHLEEN O. TATARSKY                14402 Granger Road
ASSISTANT PROSECUTOR              Cleveland, Ohio  44137
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

**{¶1}** Appellant Jason Laubacher appeals his convictions on nine drug-related counts and two counts of Having Weapons while Under Disability, following no contest pleas to all counts in the Stark County Court of Common Pleas.

**{¶2}** Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS</u>

**{¶3}** The relevant facts and procedural history are as follows:

**{¶4}** On October 23, 2017, the Canton Police Department received an anonymous call complaining about a strong smell of marijuana at certain times of the month and high traffic at a residence located at 1905 Superior Ave. N.E., Canton, Ohio. (Supp. T. at 9). Vice Detective Michelle Kalabon was assigned to investigate the complaint. She began her investigation by checking the Stark County Auditor's website and learned from the property record card that the home was owned by Appellant Jason Laubacher, that the residence was 915 square feet, and that it was heated with natural gas. (Supp. T. at 10-11). She then checked for a criminal docket and learned that Appellant Laubacher had been convicted of cultivation and possession of marijuana in 2015. Based on this information, she requested and received a court order to obtain two years of electricity records for the residence. (Supp. T. at 10). The records showed an unusually high amount of electricity use for a 915 square foot home. Based on this information, Det. Kalabon suspected a marijuana growing operation and decided to try a "trash pull."

**{¶5}** On October 26, 2017, Det. Kalabon tried the first "trash pull" which was unsuccessful. On November 7, 2017, she decided to try a "knock and talk" but no one

answered the door. (Supp. T. at 14). However, while at the residence she did notice abandoned trash in the alley directly behind the house. She drove around to the back alley and recovered two bags of trash from the public area. (Supp. T. at 14, 34). The trash bags were taken to the basement of police headquarters and inventoried. Various items were recovered including mail with Appellant Laubacher's name, "Coco Loco" potting soil which is allegedly favored by marijuana growers for its draining qualities, cut shrink wrap with an overwhelming smell of raw marijuana, and bits of raw or fresh marijuana known as "shake." (Supp. T. at 13, 23).

{¶6} On November 7, 2017, based on the above information and evidence, Det. Kalabon prepared an affidavit and requested a search warrant from the Stark County Common Pleas Court. The curtilage warrant was granted and allowed K-9 Cash, a Dutch Shepherd dog specifically trained to detect narcotics, and his handler to "sniff' the residence. (Supp. T. at 62). Cash had worked with his handler, Detective Todd Gillilan, since 2012. (Supp. T. at 90).

{¶7} At the hearing, Cash's trainer, Eric Stanbro, and his handler, Detective Gillilan, testified about Cash's training in drug detection. Stanbro is the head K-9 trainer for the Canton Police Department and has "trained a lot of dogs." He testified that he even took a leave from the police department to train dogs for the Navy SEALS in 2013. (Supp. T. at 60). It was explained that Cash was imprinted to detect narcotics and alerts by a change of behavior when a drug is detected. "The alert is the change in behavior, staring at the odor, and then I teach a behavior, which is the sit. And then he gets the reward based off that." (Supp. T. at 64-65).

{¶8} Stanbro also trained Cash's handler, Det. Gillilan. The handler watches for

the dog's change in behavior. (Supp. T. at 67). Once the handler gives the dog the command to search, the dog takes over. (Supp. T. at 68). Stanbro does everything he can to avoid teaching a dog and handler to "cue" and teaches a dog to work independently of the handler to avoid a cue. (Supp. T. at 77).

{¶9} Cash and his handler have been certified by the Ohio Peace Officers' Training Academy as a narcotics detection dog since 2012 and has been consistently recertified since that time. (Supp. T. at 70-71, 90-91). Stanbro testified that Cash is one of his favorite dogs. (Supp. T. at 73).

{¶10} On November 7, 2017, Cash and Det. Gillilan were called to do a "curtilage sniff' at Appellant Laubacher's residence on Superior Avenue. (Supp. T. at 93). They approached the front door and Cash went to work on the front of the residence. In a free air sniff, Cash "went to the north a little bit and then came back to the bottom of the door seam, at which upon inhaled twice really deep, which was a change of behavior for Cash. And then lastly sat and turned back and looked at me." Cash alerted to the odor of an illegal drug. (Supp. T. at 95). Det. Gillilan then went to the north side of the residence and gave Cash the command to search. Cash approached a basement window, his behavior changed and he sat and looked at Det. Gillilan. Cash again smelled an odor of narcotics. (Supp. T. at 98). Det. Gillilan explained that he did not take Cash to the south side of the residence because there were dogs there, and he wanted to avoid a dog fight. (Supp. T. at 97).

{¶11} Along with the above testimony, the State introduced training logs that demonstrated Cash's ability to detect drugs and were consistent with the testimony and the certification records for Cash.

{¶12} Based on Cash's detection of narcotics at the perimeter of the home, Det. Kalabon sought and received a warrant to search Appellant Laubacher's residence from the Stark County Common Pleas Court. A search of the residence revealed a marijuana grow operation; over 1,000 grams of marijuana; over 250 grams of hashish; Psilocybin (mushrooms) - a Schedule I controlled substance over five times bulk amount; over 10 unit doses in solid form of LSD; and two firearms.

{¶13} On November 15, 2017, the Stark County Grand Jury indicted Appellant, Jason Laubacher, on eleven counts, as follows:

Illegal Cultivation of Marijuana, R.C. §2925.04(A)(C)(5)(d) [F2]

Trafficking in Marijuana, R.C. §2925.03(A)(2)(C)(3)(d) [F2]

Possession of Marijuana, R.C. §2925.11(A)(C)(3)(d) [F3]

Trafficking in Hashish, R.C. §2925.03(A)(2)(C)(7)(d) [F2]

Possession of Hashish, R.C. §2925.11(A)(C)(7)(e) [F3]

Aggravated Trafficking in Drugs, R.C. §2925.03(A)(2)(C)(1)(d) [F1]

Aggravated Possession of Drugs, R.C. §2925.11(A)(C)(1)(c) [F2]

Trafficking in L.S.D., R.C. §2925.03(A)(2)(C)(5)(c) [F3]

Possession of L.S.D., R.C. §2925.11(A)(C)(5)(b) [F4]

Having Weapons While under Disability, 2 counts, R.C. §2923.13(A)(3) [F3]

{¶14} Appellant initially pled not guilty and on February 16, 2018, Appellant filed a Motion to Suppress. Specifically, Appellant challenged the dog sniff search done as part of the search warrant obtained for the curtilage of his home.

{¶15} On May 17, 2018, the trial court held a hearing on Appellant's motion to

suppress. At the hearing, the trial court heard testimony from four witnesses; three called by the State and one called by Appellant. Exhibits included the search warrants and K-9 training certificates for Cash. (Supp. T. at 62).

{¶16} By Judgment Entry filed June 25, 2018, the trial court denied Appellant's motion to suppress finding that probable cause existed to issue the warrants. The trial court found that based on a totality of the circumstances, probable cause existed for the issuance of the search warrants.

{¶17} On September 13, 2018, Appellant withdrew his previous 'not guilty' pleas and entered pleas of 'no contest' to all eleven (11) counts.

{¶18} At the plea hearing, the state briefly recited the facts:

On November 7th in Stark County, Ohio, Canton, Stark County, Ohio, a search warrant was executed at the defendant's residence. That search warrant was granted - given and granted by this court.

Inside the residence of the defendant, a litany of drugs were found, including over a thousand grams of marijuana. The items of production are - cultivation of marijuana, including glow- grow lights and other items that had been harvested. But those items were there, and the weight does equal over a thousand pounds [grams].

And there was also found in the residence, hashish, which was over 250 grams. There was also five times the bulk amount of mushrooms or – Psilocin [sic] found in the residence. L.S.D. was also found in the residence, which was over ten unit doses of the drug. And then two firearms were, also, found in the residence but found to be operable.

He did give a statement to detectives on scene, which were the Canton Police Department Special Investigations Unit, admitted that he was making money from this. Admitting that he was operating a grow operation. Admitting that he was involved in the transportation and distribution of the narcotics. (Plea/Sentence T. at 21-22).

**{¶19}** The trial court sentenced Appellant to six (6) years in prison. (9/21/2018 Plea and Sentencing Entry).

**{¶20}** Appellant filed a motion for a delayed Appeal which was granted by this Court.

**{¶21}** Appellant now appeals, raising the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

**{¶22}** "I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE.

**{¶23}** "II. THE TRIAL COURT ERRED WHEN IT IMPOSED A 6 YEAR PRISON TERM THAT IS NOT SUPPORTED BY THE RECORD.

**{¶24}** "III. THE TRIAL COURT ERRED WHEN IT IMPOSED THE MAXIMUM 5 YEAR DRIVER'S LICENSE SUSPENSION WITHOUT PROVIDING JUSTIFICATION FOR SAME.

**{¶25}** "IV. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL."

**I.**

**{¶26}** In his first assignment of error, Appellant argues the trial court erred in denying his motion to suppress. We disagree.

**{¶27}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726 (1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

**{¶28}** Appellant challenges the grounds for the issuance of the curtilage warrant; reliability of the K-9 sniff search; and probable cause for the search warrant for the home.

**{¶29}** Appellant herein argues the search warrants were not supported by probable cause.

**{¶30}** The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect against unreasonable searches and seizures and provide that a warrant can be issued only if probable cause for the warrant is supported by an oath or affirmation and particularly describes the place to be searched and the persons or things to be seized. *See also* Crim.R. 41(C); R.C. 2933.23.

**{¶31}** In deciding whether probable cause exists for the issuance of a search warrant, the issuing judge must make " 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, following *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[C]onsiderations to be taken into account when determining whether to issue a search warrant include how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched." *State v. Castagnola*, 2015-Ohio-1565, ¶ 34, 145 Ohio St.3d 1, 46 N.E.3d 638, citing 2 *LaFave*, *Search and Seizure*, Section 3.7(a), (b), (d). " 'To establish probable cause to search a home, the facts must be sufficient to justify a conclusion that the property that is the subject of the search is probably on the premises to search.' " *State v. Marler*, 2d Dist. Clark No. 2007 CA 8, 2009-Ohio-2423, ¶ 26, quoting *State v. Freeman*, 4th Dist. Highland No. 06CA3, 2006-Ohio-5020, ¶ 13. "The

nexus between the items sought and the place to be searched depends upon all of the circumstances of each individual case, including the type of crime and the nature of the evidence." *State v. Carter*, 2d Dist. Greene No. 2011 CA 11, 2011-Ohio-6700, ¶ 10, citing *Freeman* at ¶ 13.

**{¶32}** The duty of the reviewing court is to ensure that the issuing judge had a "substantial basis" for concluding that probable cause existed. *Castagnola* at ¶ 35; *George* at paragraph two of the syllabus. When conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, reviewing courts should accord "great deference" to the issuing judge's determination of probable cause; "doubtful or marginal cases should be resolved in favor of upholding the warrant." *George* at paragraph two of the syllabus. Neither a trial court nor an appellate court may substitute its judgment for that of the issuing judge by determining de novo whether the affidavit provided sufficient probable cause. *Id.*

**{¶33}** Appellant herein argues that the tip received by the police from an anonymous citizen was stale and was unreliable. Appellant claims that the tip was fifteen (15) days old when the request for the warrant was made and was therefore stale.

**{¶34}** "There is no arbitrary time limit that dictates when information [offered to support a search warrant application] becomes stale." *State v. Ingold,* 10th Dist. No. 07-AP648*,* 2008-Ohio-2303. Instead, "[t]he test for staleness is whether the alleged facts justify the conclusion that contraband is probably on the person or premises to be searched at the time the warrant issues." *Id. See also State v. Rieves*, 8th Dist., 2018-Ohio-955, 109 N.E.3d 190, ¶ 31 (internal quotation omitted) (stating information becomes

stale when enough time has elapsed such that there is no longer sufficient basis to believe that the items to be seized are still on the premises).

**{¶35}** "The question of staleness is not measured solely by counting the days between the events listed in the affidavit and the application for warrant." *Ingold* at 23. "Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident or ongoing criminal activity." *Id.*

**{¶36}** An affidavit supporting a search warrant which, viewed in its totality, indicates investigation into an ongoing criminal operation, such as drug trafficking, may support the issuance of a search warrant even where the information provided in the affidavit is not recent. *United States v. Ortiz*, 143 F.3d 728, 733 (2d Cir.1998), quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir.1981) ("[W]hen the supporting facts 'present a picture of continuing conduct or an ongoing activity, ... the passage of time between the last described act and the presentation of the application becomes less significant."); *State v. Ridgeway*, 4th Dist. 00CA19, 2001-Ohio-2655, quoting *State v. McKenzie*, 6th Dist. No. E-97-040, (Sept. 18, 1998) (" '[A]n affidavit which establishes a pattern of conduct or indicates an ongoing investigation can justify the granting of a search warrant based on old information.' ").

**{¶37}** For example, information in an affidavit over one month old has been found to support probable cause to issue a search warrant where the affidavit describes ongoing criminal activity. *See, e.g., State v. Clouser*, 4th Dist. No. 16CA4, 2016-Ohio-5370, 2016

WL 4268772, ¶ 16-17 (two and one-half months between last incidents of drug transactions and warrant application not stale and supported probable cause); *State v. Prater*, 12th Dist. No. CA2001-12-114, 2002-Ohio-4487, 2002 WL 2005708, ¶ 10-14 (six months between last incidents of drug transactions and warrant application not stale and supported probable cause).

**{¶38}** Different offenses have different periods of time in which the government can act on information before it is considered stale.

**{¶39}** In the instant case, Appellant was being investigated for, and was ultimately charged with, operating a marijuana grow operation. A marijuana growing operation, in which the marijuana must grow to maturity and then be harvested, has a longer lifetime of relevant data than a cocaine distribution operation in which all sales may be consummated within hours of delivery. *See United States v. Greany,* 929 F.2d 523, 525 (9th Cir.1991) (nearly two-year old information on marijuana growing operation upheld, staleness evaluated in light of particular facts of case and nature of criminal activity and property sought); *United States v. Dozier,* 844, F.2d 701, 707 (9th Cir.1988) (marijuana cultivation is long-term crime; even "substantial" time lapse not controlling on staleness).

**{¶40}** Based on the facts of this case, we do not find that the tip was stale. We likewise do not find that the tip was unreliable as the investigating officer did her own independent verification by researching the auditor's records, performing a trash pull, subpoenaing and reviewing utility records and reviewing the criminal docket.

**{¶41}** We likewise consider the reliability challenges to the power usage the canine sniff and find that taken together with the other evidence, probable cause existed for the search warrants.

{¶42} Det. Kalabon's affidavit in support of the search warrant stated that the electric records for Appellant's property were unusually high for the previous two years. She used the August, September and October electric consumption readings as examples. We find same, taken together with the other evidence to be sufficient to support the probable cause finding.

{¶43} Testimony and evidence were submitted as to the training and certification of the K-9. While Appellant challenges the reliability of the canine sniff search because the dog did not sniff the entire perimeter, we find no support for the proposition that such is required. Here, the K-9 alerted twice to the presence of drugs at Appellant's home. Appellant does not challenge such findings.

{¶44} Even if we were to determine the search warrant was not supported by probable cause, we could find the trial court did not err in denying Appellant's motion to suppress under the "good faith exception" to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984), and adopted by the Ohio Supreme Court in *State v. Wilmoth*, 22 Ohio St.3d 251 (1986). Under the "good faith exception," the exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. *State v. George*, 45 Ohio St.3d 325, 330 (1980), *citing Leon*, *supra* at 918-23, 926. However, even under the "good faith exception," suppression of evidence is appropriate where any of the following occurs:

(1) * * * the magistrate or judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false

except for his reckless disregard of the truth * * *; (2) * * * the issuing magistrate wholly abandoned his judicial role * * *; (3) an officer purports to rely upon * * * a warrant based upon an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) * * * depending on the circumstances of the particular case, a warrant may be so facially deficient-i.e. in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

{¶45} *Leon*, *supra* at 923.

{¶46} We hold that, looking at the totality of the evidence, there was ample probable cause to support the issuance of the warrants. The electrical usage was high for the size of the house. The anonymous tip complained of an odor coming from the house every other month in addition to high traffic at the home during those periods. Trash recovered from the alley behind the house included a type of potting soil used by marijuana growers, along with shrink wrap which smelled of marijuana. Additionally, Appellant had previously been charged and found guilty of similar offenses.

{¶47} "Statements made in a search warrant affidavit enjoy a presumption of validity. *State v. Taylor*, 174 Ohio App.3d 477, 2007-Ohio-7066, 882 N.E.2d 945 (1st Dist.). Without evidence to the contrary, this court is bound to find the statements made in the affidavit valid and, thus, the warrants valid." *State v. Mock*, 2018-Ohio-268, 106 N.E.3d 154, ¶ 18 (8th Dist.).

{¶48} Appellant's first assignment of error is overruled.

**II.**

**{¶49}** In his second assignment of error, Appellant argues that his sentence is not supported by the record. We disagree.

**{¶50}** R.C. §2953.08(G)(2), "Appeals based on felony sentencing guidelines" provides:

The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence * * *. The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division 2929.13(B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law. R.C. 2953.08(G)(2).

**{¶51}** "[A]ppellate courts must adhere to the plain language of R.C. 2953.08(G)(2)." *State v. Marcum,* 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶7. An appellate court may only modify or vacate a sentence if it finds by clear and

convincing evidence that the record does not support the sentencing court's decision. *Id.* at ¶23. Clear and convincing evidence is that " 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State v. Silknitter,* 3rd Dist. Union No. 14–16–07, 2017–Ohio–327, ¶ 7 quoting, *Marcum, supra,* quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but does not require the certainty of "beyond a reasonable doubt." *Marcum,* at ¶ 22 quoting *Ledford.*

**{¶52}** R.C. § 2929.11(A) governs the purposes and principles of felony sentencing and provides that a sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing, which are (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using the minimum sanctions that the court determines will accomplish those purposes. Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. § 2929.11(B).

**{¶53}** R.C. § 2929.12 sets forth the seriousness and recidivism factors for the sentencing court to consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C. § 2929.11. The statute provides a non-exhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

**{¶54}** In *State v. Kalish*, 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124, the court discussed the effect of the *State v. Foster,* 109 Ohio St.3d 1, 2006–Ohio–856,

845 N.E.2d 470 decision on felony sentencing. The court stated that in *Foster* the Court severed the judicial-fact-finding portions of R.C. § 2929.14, holding that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Kalish* at ¶1 and ¶11, *citing Foster* at ¶ 100. *See also, State v. Payne*, 114 Ohio St.3d 502, 2007–Ohio–4642, 873 N.E.2d 306; *State v. Firouzmandi*, 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823.

**{¶55}** "Thus, a record after *Foster* may be silent as to the judicial findings that appellate courts were originally meant to review under 2953.08(G)(2)." *Kalish* at ¶ 12. However, although *Foster* eliminated mandatory judicial fact-finding, it left intact R.C. 2929.11 and 2929.12, and the trial court must still consider these statutes. *Kalish* at ¶ 13, *see also State v. Mathis*, 109 Ohio St.3d 54, 2006–Ohio–855, 846 N.E.2d 1; *State v. Firouzmandi supra* at ¶ 29.

**{¶56}** Thus, post-*Foster,* "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to 'consider' the statutory factors." *Foster* at ¶ 42. *State v. Rutter*, 5th Dist. No. 2006–CA–0025, 2006–Ohio–4061; *State v. Delong*, 4th Dist. No. 05CA815, 2006–Ohio–2753 at ¶ 7–8. Therefore, post-*Foster*, trial courts are still required to consider the general guidance factors in their sentencing decisions.

**{¶57}** There is no requirement in R.C. § 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them. *State v. Polick*, 101 Ohio App.3d 428, 431(4th Dist. 1995); *State v. Gant,* 7th Dist. No. 04 MA 252, 2006–Ohio–1469, at ¶ 60 (nothing in R.C. § 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth

its findings), *citing State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94 (1992); *State v. Hughes*, 6th Dist. No. WD–05–024, 2005–Ohio–6405, ¶ 10 (trial court was not required to address each R.C. § 2929.12 factor individually and make a finding as to whether it was applicable in this case), *State v. Woods*, 5th Dist. No. 05 CA 46, 2006–Ohio–1342, ¶ 19 ("... R.C. 2929.12 does not require specific language or specific findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors"). (Citations omitted).

**{¶58}** Here, Appellant herein pled no contest to nine drug-related counts (One F1, four F2s, three F3s and one F4) and two counts of Having Weapons while Under Disability (both F3s).

**{¶59}** The trial court considered the type and quantity of drugs found and seized at Appellant's home, along with operable firearms. (Plea T. at 21). The court also considered statements Appellant made to the officers on the scene regarding his transportation and distribution of the drugs and the profit he was making therefrom. (Plea T. at 22). Additionally, the trial court considered his prior criminal history.

**{¶60}** The sentencing range for the F1 Aggravated Trafficking in Drugs count alone is three (3) to eleven (11) years. The trial court imposed an aggregate sentence of six (6) years in this case.

**{¶61}** Upon a thorough review, we find the record clearly and convincing supports the sentence imposed by the trial court. We find the trial court properly considered the purposes and principles of sentencing set forth in R.C. § 2929.11, as well as the applicable factors set forth in R.C. § 2929.12, along with all other relevant factors and circumstances. While Appellant may disagree with the weight given to these factors by

the trial judge, Appellant's sentence was within the applicable statutory range for a felony of the first degree and therefore, we have no basis for concluding that it is contrary to law.

**{¶62}** Appellant's second assignment of error is overruled.

### III.

**{¶63}** In his third assignment of error, Appellant argues that the trial court erred in imposing a maximum five (5) year driver's license suspension. We disagree.

**{¶64}** Appellant herein argues that because the search warrants in this matter did not involve an automobile, his driver's license suspension was an abuse of discretion.

**{¶65}** Pursuant to R.C. §2925.11(E)(1) and (2), when an offender is sentenced for felony drug possession under this statute, in addition to imprisonment and a fine, "[t]he court shall suspend for not less than six months or more than five years the offender's driver's * * * license * * *." *See, also, State v. Thompkins* (1996), 75 Ohio St.3d 558, 561 (holding that mandatory driver's license suspensions for "all drug offenders, regardless of whether a motor vehicle was used in the commission of the offense" are constitutional, and serve "as an effective means to protect other drivers and passengers on the roads and to deter future drug use and punish offenders").

**{¶66}** We therefore find no abuse of discretion. Appellant's third assignment of error is overruled.

### IV.

**{¶67}** In his fourth and final assignment of error Appellant argues the he was denied the effective assistance of counsel.

**{¶68}** To prevail on a claim of ineffective assistance of counsel, a defendant "must satisfy a two-prong test." *State v. Kennard*, 10th Dist. No. 15AP-766, 2016-Ohio-2811, ¶

14, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the first prong, a defendant must "demonstrate that his trial counsel's performance was deficient." *Id.* If a defendant "can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance." *Id.* A defendant's "failure to make either showing defeats a claim of ineffective assistance of counsel." *Id.*, citing *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), quoting *Strickland* at 697, 104 S.Ct. 2052.

{¶69} In order to demonstrate deficient performance by counsel, a defendant "must show that his counsel committed errors which were so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at ¶15 (Quotations omitted). Further, a defendant "must overcome the strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance." *Id.*, citing *Strickland* at 689. In order to show prejudice, a defendant "must establish there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different." *Id.*, citing *Strickland* at 689.

{¶70} Appellant herein argues that his counsel was ineffective because he failed to subpoena the training, certification and/or testing records of the K-9 or his handler prior to the suppression hearing and for failing to object to the admission of the K-9 certificates at the hearing.

{¶71} Upon review, we find no prejudice to Appellant with regard to the failure to subpoena the K-9 records. At the hearing, both the trainer and the handler of K-9 Cash testified as to the canine's training and certification. The training records were identified by Det. Gillilan and the certification records were identified by both Eric Stanbro and Det.

Gillilan.  Appellant's counsel cross-examined both the trainer and the handler. Appellant has failed to show how the outcome of the hearing would have been any different had counsel subpoenaed the records or challenged their admission.

**{¶72}** Appellant's fourth assignment of error is overruled.

**{¶73}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.


By: Wise, J.

Hoffman, P. J., and

Baldwin, J., concur.


JWW/d 1001